UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA :
:
v. : Case No. 1:94-cr-87-jgm
:
CLIFFORD EARL BARTZ :
_____:

ORDER
(Docs. 108, 115)

I. Introduction

On June 4, 2012, Clifford Bartz moved to dismiss a portion of his restitution obligations based on a victim's bankruptcy. (Doc. 108.) On July 31, 2012, Bartz moved to terminate restitution altogether. (Doc. 115.) The Government opposes both motions (Docs. 109, 118) and a hearing was held on October 10, 2012 (Doc. 122). The parties spent the next year in settlement discussions but were unable to come to an agreement. See Doc. 132. Accordingly, the matters are now ripe for decision. For reasons set forth more fully below, the motions are DENIED.

II. Background

In 1995, after Bartz pleaded guilty to a range of offenses including robbery, firearms possession, and intimidation of a witness, the Court sentenced him to 240 months in prison and ordered $147,690.52 in restitution. (Doc. 103 at 12-13.) Bartz served approximately 17 years and was released in April 2012. (Doc. 118 at 1.) While in prison he made restitution payments and has continued to do since his release. Id.; Doc. 115 at 2. Bartz's conditions of supervised release, which he will be subject to until April 2015, require him to make restitution payments of "at least" ten percent of his gross monthly income. (Doc. 110 at 1.) While in prison, Bartz inherited his parents' home in Barnstable, Massachusetts (assessed at $207,000), and received an estate distribution of at

least $35,000.¹  (Doc. 118 at 2.)  The Probation Office requested Bartz apply approximately half the distribution amount towards his restitution obligation.  (Doc. 110 at 1.)  Bartz refused, and the motions to dismiss a portion of his restitution (Doc. 108) or, alternatively, terminate it altogether (Doc. 115), followed shortly thereafter.  As of September 7, 2012, Bartz owed $117,257.85 (Doc. 118 at 1), although he has made at least 13 monthly payments of varying amounts since then.

III.    Discussion

The restitution issue has been raised at least five times since sentencing.  See United States v. Bartz, 1:94-cr-87, 2011 WL 3042377, at *1 (D. Vt. July 25, 2011).  Bartz raises two legal arguments in his motion to terminate restitution:  the first claims the restitution order is illegal and the Court should now terminate the order under 18 U.S.C. § 3583(e)(2); the second contends the Government may only collect restitution for five years after the date of sentencing and therefore, the restitution order must be terminated as a matter of law.  (Doc. 115.)  Finally, Bartz also moves to dismiss a portion of his restitution obligation, arguing he should not pay restitution to one of his victims because it went bankrupt.  (Doc. 108.)  The Court will address these in turn.

      A.    The Alleged Illegality of the Restitution Order

First, Bartz claims the Court's 1995 order of restitution was "illegal" because it did not consider his financial circumstances.  (Doc. 115 at 3.)  Bartz argues that under 18 U.S.C. § 3583(e)(2), the Court now has the authority "to modify, or in this case terminate, its Order of Restitution as a condition of supervised release."  Id. at 4.  In response, the Government contends that as a preliminary matter, the "law of the case" doctrine prevents Bartz from "re-litigating . . . the

---

¹ According to the Government, the original amount was $70,000.  (Doc. 118 at 2.)  The current amount remaining is unknown.  At the October 10, 2012 hearing, Bartz's attorney informed the Court that Bartz had $6,900 remaining from the estate distribution.  Most of the money was apparently used in repairing the Barnstable home.  Now, 15 months later, it is unclear how much (if any) money remains from the estate distribution.

2

alleged illegality of the restitution order" because the Court has already ruled on this issue. (Doc. 118 at 3 n.2.) The Government further characterizes Bartz's motion as an impermissible "request to alter his sentence disguised as a motion to modify a condition of supervised release" and, in any event, claims Bartz has not met the standard to modify the conditions of his supervised release under § 3583(e). Id. at 2-3.

The Court agrees with the Government: Bartz has previously raised, and the Court has previously ruled on, the same issues now before it yet again. Three years ago, Bartz filed a "Writ of Hardship" and argued restitution should not have been ordered because the Court failed to consider his ability to pay. Bartz v. United States, 1:94-cr-87, 2010 WL 1286667, at *2 (D. Vt. Mar. 26, 2010). In that case, the Court denied Bartz's motion because he did not contend the sentencing was invalid "due to 'errors of the most fundamental character'" or "explain why he did not challenge the restitution either on direct appeal or in a timely post-judgment motion." Id. (quoting Foont v. United States, 93 F.3d 76, 78 (2d. Cir. 1996)). And two years ago, the Court denied Bartz's request to again revisit the restitution obligation in his conditions of supervised release under 18 U.S.C. § 3583(e)(2), which gives the district court the power to "modify, reduce, or enlarge the conditions of supervised release." United States v. Bartz, 1:94-cr-87, 2011 WL 3042377, at *1 (D. Vt. July 25, 2011) (internal quotation marks omitted). Bartz appealed that decision and the Second Circuit summarily affirmed, issuing its Mandate on March 12, 2012. (Doc. 106.)

Bartz has not presented sufficient reasons for the Court to reconsider -- let alone depart from -- its 2010 or 2011 decisions; indeed, he fails to address the Court's previous rulings on this issue at all. Under the law of the case doctrine, if "a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court . . . that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling

3

reasons militate otherwise." United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal quotation marks and citations omitted). The trial court must also "follow an appellate court's previous ruling on an issue in the same case." Id. at 1225. Accordingly, under the "mandate rule," this Court may not depart from the Second Circuit's Mandate affirming the 2011 ruling. Id. Even were the Court to consider the merits, Bartz's argument fails for the same reasons the Court stated in 2011: § 3583(e)(2) does not provide the Court with the authority to terminate his restitution obligation.[2] Terminating Bartz's restitution obligation would impermissibly alter his sentence. See, e.g., United States v. Kyles, 601 F.3d 78, 83 (2d Cir. 2010) ("It is well-established that a district court may not alter an imposed sentence, except in narrow circumstances not present here."). Furthermore, as the Government points out, "[t]he plain language of subsection 3583(e)(2) indicates that the illegality of a condition of supervised release is not a proper ground for modification under this provision." (Doc. 118 at 11 (quoting United States v. Lussier, 104 F.3d 32, 34 (2d Cir. 1997).) Bartz is therefore precluded from re-litigating the alleged illegality of his restitution obligation.

B.  Restitution Time Limits Under the Victim and Witness Protection Act

Second, Bartz claims the restitution order must be terminated as a matter of law because under the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA") (in effect at the time of Bartz's sentencing), the Government may only collect restitution for five years after the date of sentencing. (Doc. 115 at 6.) He relies primarily on United States v. Holland, 380 F. Supp. 2d 1264 (N.D. Ala. 2005), in support of this argument. Section 3663(f)(2) of the VWPA provided that if a district court required a defendant to make restitution "within a specified period or in specified

---

[2] "Section 3583(e)(2) applies only to conditions of supervised release, [] not to other portions of a defendant's sentence," and restitution orders imposed at sentencing are "fully independent criminal penalties" not subject to § 3583(e)(2) modification "simply because it may later be implicated as a condition of supervised release." Bartz, 2011 WL 3042377, at *2 (internal quotation marks and citation omitted).

4

installments[,] [t]he end of such period or the last of such installment shall not be later than[:] (A) The end of the period of probation, if probation is ordered; (B) Five years after the end of imprisonment imposed, if the court does not order probation; and (C) Five years after the date of sentencing in any other case." See Holland, 380 F. Supp. 2d at 1269-70. The Holland Court interpreted this section as "clearly provid[ing] a five-year time limit on all restitution obligations" when it held that the defendant's obligations had expired as a matter of law under § 3663(f)(2)(C). Id. at 1269.

Other circuits, however, have a markedly different interpretation of § 3663. In United States v. Berardini, 112 F.3d 606 (2d Cir. 1997), the Second Circuit held that restitution orders under the VWPA are enforceable for up to 20 years from the date of sentencing because, under § 3663(h), restitution orders may be enforced "in the same manner as a judgment in a civil action" by either the government or a victim named in the restitution order. 112 F.3d at 611. The First, Sixth, Seventh, Ninth, and Eleventh Circuits have similarly found that § 3663(f)(2) does not prohibit the government from collecting restitution after five years. See Doc. 118 at 8 (citing cases); FDIC v. Dover, 453 F.3d 710, 716-17 (6th Cir. 2006) (same).

The First Circuit resolved the apparent confusion between §§ 3663(f) and 3663(h) by explaining that while "subsection (f) controls the authority of the sentencing court . . . [and] simply authorizes the sentencing court to impose an order of restitution," subsection (h) governs enforcement of the restitution. United States v. Rostoff, 164 F.3d 63, 66-67 (1st Cir. 1999) (emphasis in original). In other words, if the sentencing court does not make restitution due immediately and instead "elect[s] to make restitution due in installments, or at the end of a specified period[,] [t]he sentencing court's discretion in this regard is constrained: payment must fall due by the end of the period of supervised release." Id. at 66 (citing § 3663(f)(1)) (emphasis in original).

That an installment payment must be due by a specified period of time, however, does not mean the restitution order simply expires on that date. See id. ("Common sense dictates that failure to pay at the time due renders payment overdue; it does not abate the obligation entirely."); United States v. Greenberg, 1:06MC55, 2006 WL 3304180, at *1 (D. Vt. Oct. 20, 2006) ("[A] statute which limits the duration of a grace period for payment, in effect, 'does not terminate the obligation to make restitution.'" (quoting United States v. House, 808 F.2d 508, 511 (7th Cir. 1986)).

In line with the above reasoning, the Court finds that § 3663 does not prevent the Government from collecting Bartz's restitution obligation after five years. See Rostoff, 164 F.3d at 68 ("[W]e conclude that 18 U.S.C. § 3663(f)(2) does not limit the time in which a restitution order may be enforced."). Under 18 U.S.C. § 3613(c), orders of restitution made under § 3663 are "liens in favor of the United States on all property and rights to property of the person fined." The lien is imposed upon entry of judgment, in Bartz's case, November 8, 1995 (Doc. 103 at 1), and continues for 20 years. 18 U.S.C. § 3613(c); see Rostoff, 164 F.3d at 67. The Government concedes Bartz's "restitution obligation will become unenforceable after November 8, 2015." (Doc. 118 at 5.)[3]

Finally, Bartz claims the restitution order cannot reach his "inheritance or tax refunds." (Doc. 115 at 8.) This argument fails as well. The restitution order simply requires Bartz to "[m]ake payment of restitution in the amount of at least 10% of gross monthly income" and does not prohibit the Probation Office's request to increase that amount. Ordering an increase or decrease in restitution payments, without changing the overall restitution obligation, is permissible. See Kyles, 601 F.3d at 80 ("Implicit in such effectively equitable power [of § 3663] is the authority to modify an initial payment schedule as warranted by a defendant's financial circumstances, mindful of the

---

[3] The Court finds the Probation Office's request -- that Bartz turn over half of the distribution received from his parents' estate towards his restitution obligation -- to be reasonable, although it recognizes that the original request (half of $35,000, or $17,500) may no longer be realistic given the time that has passed. See footnote 2, supra.

overall statutory goal of compensating crime victims."). In this case, Bartz's financial circumstances have improved. His motion to terminate restitution (Doc. 115) is therefore denied.

C. The Grand Union Company's Bankruptcy

The Court ordered Bartz to pay The Grand Union Company ("Grand Union") $6,815 in restitution, representing the amount he and his co-conspirators stole from grocery stores owned by Grand Union. (Doc. 35 at 4; see Doc. 109 at 2; Doc. 103 at 12.) Acting pro se, Bartz claims that because Grand Union went bankrupt, he should no longer have to pay what remains of that portion of his restitution obligation. As of June 18, 2012, Bartz owed $933.09 to Grand Union. (Doc. 109-2 at 1.) The Government disagrees "because the obligation to pay restitution to the victim, or its successor-in-interest, has not been altered by the bankruptcy filings." (Doc. 109 at 1.)

Between 1995 and 2007, Grand Union indeed underwent bankruptcy proceedings in the United States Bankruptcy Court for the District of New Jersey. Id. at 2 (citing In re The Grand Union Co., USBC-NJ-Newark, Case No. 00-39613-NLW). The Clerk of this Court received a notice of a change of address for Grand Union on September 21, 2007. (Doc. 109-2 at 2.) And, according to this Court's Financial Administrator, "[s]ince that date, restitution payments for the Grand Union Company have been sent via U.S. Treasury check to the new address [and] [t]he payments appear to be received at that address and have been negotiated."[4] Id. The Court

---

[4] The Government notes that Grand Union's grocery stores were apparently sold in the last bankruptcy case and argues that even if Bartz's debt were transferred to another company, "a restitution victim's successor-in-interest nevertheless remains entitled to receive restitution payments." (Doc. 109 at 3 n.1.) Bartz does not explain why he believes that a victim's bankruptcy would terminate his restitution obligation to that victim. Although there is admittedly a dearth of cases featuring this exact posture (instead, most concern a defendant's attempt to discharge a restitution obligation in bankruptcy), the Government cites United States v. Wallace, 451 F. App'x 523 (6th Cir. 2011), where the Sixth Circuit found a victim's successor-in-interest to be a "proper recipient of a restitution award." 451 F. App'x at 527. The Court agrees that where "the direct victim . . . passes on its loss to a successor in interest," restitution is still proper. Id. at 526.

7

therefore has no reason to relieve Bartz of his restitution obligation to Grand Union, which continues to receive and cash restitution checks.  His motion (Doc. 108) is denied.

IV. Conclusion

For the foregoing reasons, Bartz's motion to terminate restitution (Doc. 115), and his pro se motion to dismiss his restitution obligation to Grand Union (Doc. 108), are DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 7th day of January, 2014.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge